# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America,

              Plaintiff,      Case No. 16-cr-20239-01

v.                                     Judith E. Levy
                                     United States District Judge

Justin D. Fuller,

              Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL [244]

The Court held a jury trial in the above-captioned case from March 28, 2017, to April 13, 2017. On April 13, 2017, the jury reached a verdict finding defendant guilty of all fourteen counts for which he was indicted, including one count of child exploitation enterprise, multiple counts of conspiracy to commit child exploitation crimes, and multiple counts of production of child pornography and enticement of a minor. Defendant now moves under Fed. R. Crim. P. 33(a) to have the Court vacate the judgment against him and grant a new trial. (Dkt. 244.) For the reasons set forth below, defendant's motion is denied.

## I. Background

On November 16, 2015, an individual by the name of Virgil Napier was arrested in Waterford, Michigan. (Dkt. 260 at 33.) Subsequent to his arrest, investigators learned that Napier was part of a coordinated group that worked together to find young girls, invite them into secure chat rooms, and entice them to perform sexual acts. (*Id.* at 34–35.) In an effort to identify other members of the group, an FBI agent named Adam Christensen received permission to assume Napier's online identity for a twenty-one day undercover operation. (*Id.*) During the course of the undercover operation, Christensen observed and recorded hundreds of hours of online activity – both text chat and video – within the secure chat rooms. (*Id.* at 35–46.)

During the operation, Christensen learned the KIK online messaging system usernames for other members of the group, including two accounts associated with an individual who used the name "Yep" in his activities within the private group chat rooms. (Dkt. 261 at 25–26.) The FBI subpoenaed KIK in order to determine the IP address associated with those usernames, and from that information, determined the physical address of the internet subscriber using the

KIK accounts. (*Id.* at 35.) This was the Modesto, California residence of defendant Fuller. (*Id.*)

When law enforcement executed a search warrant at Fuller's home, they recovered numerous electronic devices including a desktop computer, an external hard drive, an iPhone, and a laptop computer. (*Id.* at 46.) The forensic examination of those devices, which was approximately twenty-eight percent complete at the time of the trial, identified approximately 2,700 saved child pornography videos. (*Id.* at 75 and 77.)

On the day the search warrant was executed, Fuller gave a recorded confession at his home. (*See, e.g.* Dkt. 263 at 143–45.) He later gave a second recorded confession (Dkt. 264 at 34–36) and signed a written confession in which he admitted to misconduct including "watching minors undress and perform sexual acts, such as rubbing their genitals," "record[ing] this conduct and sav[ing] the recordings on [his] personal computer," and "convincing these females to remove their clothing and rub their genitals by 'looping' another teenage male's video and telling the female that [he] was the person in the 'looped' video." (*Id.* at 39.)

3

In addition to the evidence described above, the three-week trial included testimony from co-defendant Virgil Napier, testimony from one minor victim, and testimony from nine mothers of identified minor victims.

## II. Legal Standard

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Such a motion should generally only be granted "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Hughes*, 505 F.3d 578, 593-94 (6th Cir. 2007). "A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *Hughes*, 505 F.3d at 593 (citing *United States v. Lutz,* 154 F.3d 581, 589 (6th Cir.1998)).

## III. Analysis

Defendant moves for a new trial on four grounds: (1) prosecutorial misconduct tainted the trial; (2) the Court erred in limiting cross-examination of co-defendant Virgil Napier regarding sentencing

4

benefits he stood to gain in exchange for his testimony; (3) the Court erred in denying the suppression of evidence or a *Franks* hearing on certain evidence; and (4) defendant's Confrontation Clause rights were violated by the admission into evidence of co-defendant John Garrison's video file naming convention.

  *a. Prosecutorial Misconduct*

Defendant contends that a variety of inflammatory statements tainted the prosecution's closing argument and rebuttal. (Dkt. 244 at 6.) When a defendant contends that prosecutorial misconduct justifies a new trial, the misconduct "must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Mahar*, 801 F.2d 1477, 1503 (6th Cir. 1986) (further citations omitted). The Court conducts a two-part analysis to determine whether prosecutorial misconduct warrants a new trial. First, "a court must first consider whether the prosecutor's conduct and remarks were improper." *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001) (citations omitted).

> If the remarks were improper, the court must then consider and weigh four factors in determining whether the impropriety was flagrant and thus warrants reversal. These four factors are as follows: (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or

prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.

*Id.*

The first challenged statement is one made during the government's rebuttal closing argument: "Do you honestly think that if [defendant] had the brain of a 15-year-old kid sitting here that we would be sitting in federal court? There's no evidence of that. Don't let that fool you." (Dkt. 266 at 108.) Defendant did not object to this statement at trial. He now argues that this statement implies a claim that "someone with the brain of a 15-year-old kid would somehow be precluded from trial in federal court." (Dkt. 244 at 7.)

When reviewing allegations of prosecutorial misconduct, it is "appropriate to consider whether, and to what extent, a prosecutor's improper argument is invited by defense counsel's statements." *United States v. Jacobs*, 244 F.3d 503, 508 (6th Cir. 2001) (citing *United States v. Hickey*, 917 F.2d 901, 905 (6th Cir. 1990)). Prior to trial, the Court granted the government's motion to exclude any evidence regarding defendant's mental health and mental state during trial. (Dkt. 212.) As

6

the government points out (Dkt. 248 at 12), defendant's counsel improperly argued during his closing argument that defendant was mentally akin to a fifteen or sixteen-year-old. (Dkt. 266 at 98 ("Here's a guy that's identifying with these 15 and 16 year olds. Because truly that's where his mind is. He's not like these [co-defendant] 40 and 50 year olds.").) In context, the prosecutor was rebutting defense counsel's earlier argument that defendant should not be held liable for his actions because he was less mentally culpable than his co-defendants. Such a rebuttal is "completely proper." *United States v. Beverly*, 369 F.3d 516, 544 (6th Cir. 2004).

The second set of statements to which defendant objects were made during rebuttal: "This man took advantage of hundreds of girls. Hundreds. We showed you some of the clips, the necessary clips we needed to get there. But you heard evidence that there was a lot more." (Dkt. 266 at 108.) "We didn't show you every stitch of thing there was. We tried to show you the least amount we could to minimize the trauma on everyone." (*Id.* at 108–09.) Defendant argues that these statements are "inflammatory appeals to the jury" and that they imply the existence of facts that had not been shown at trial. (Dkt. 244 at 7.)

7

However, the overwhelming evidence in the case demonstrated that there were hundreds of hours of video evidence the jury did not see, and that the defendants victimized hundreds of minor victims. (*See, e.g.,* Dkt. 263 at 39 (witness asserting that it would take "weeks and months" to show the jury every video from defendant's desktop computer and external hard drive); Dkt. 263 at 12 (witness affirming "hundreds" of unidentified minor victims).) As the prosecutor's statements were directly supported by testimony and evidence presented during the trial, they were not improper.

The third rebuttal statement regarded a mathematical equation the prosecution used to extrapolate that defendant had and would continue to victimize thirty-five girls a year if he was not convicted. (Dkt. 244 at 8.) Defendant argues that this was misconduct, citing *United States v. Foster*, 982 F.2d 551 (D.C. Cir. 1993) and *United States v. Roberts*, 119 F.3d 1006 (1st Cir. 1997) as cases where prosecutors improperly implied that a defendant had committed other crimes for which no evidence had been provided. However, in each of those cases, the prosecutor argued that the defendant had previously committed criminal acts for which there was no evidence, or that events did or did

8

not occur when no evidence for those proffered reasons was provided. *See Foster*, 982 F.2d at 555 (holding that it was improper for a prosecutor to state that a defendant was engaged in "[d]rinking, dope, selling drugs . . . [d]ealing all day long, all morning long."); *Roberts*, 119 F.3d at 1016 (holding that it was improper for a prosecutor to offer in rebuttal that certain evidence was nor provided because to get the evidence would have violated due process).

Here, the equation the prosecution used was based on an undercover agent's testimony regarding the frequency and extent of defendant's online activities witnessed within in a twenty-one day period. The equation was supported by extensive evidence and testimony that defendant had been engaged in a child pornography production enterprise for years (*see, e.g.,* Dkt. 262 at 51 (witness confirming that defendant had been creating child pornography videos for "more than three years")) and that he possessed thousands of videos that had been produced over that time period (*see, e.g.,* Dkt. 261 at 77 (witness confirming that a forensic analysis of defendant's laptop computer and external hard drive revealed more than 2,700 suspected child pornography videos)).

9

It was not improper for the prosecution to ask the jury to consider how many times defendant had committed a crime in the past based on overwhelming evidence that he had committed some unknown number of crimes in the past, or for the prosecution to ask the jury to estimate how many times he would commit the crime in the future, based on his documented past course of conduct.

Defendant also challenges the following statement made during the prosecution's closing argument: "The defendant and this team took something away from them that they can never get back. Their sense of privacy, their sense of security and safety. Their innocence." (Dkt 232 at 44.) He argues that this statement is akin to a statement, not based on evidence, where the prosecution argued that the defendant took a victim's virginity. (Dkt. 244 at 10 (citing *United States v. Bird*, 372 F.3d 989 (8th Cir. 2004)).)

A prosecutor may introduce victim impact evidence at trial, including during closing argument, for "entirely legitimate purposes." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). "A prosecutor is permitted a certain degree of latitude in summation." *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir. 1977). Here, even if there was not

direct evidence regarding the impact of the defendant's conduct on his victims, the prosecutor's statements did not prejudice the jury to the point where the entire trial was rendered fundamentally unfair, particularly given the nature of the crime, the testimony offered from the minor victim and nine mothers of victims, and the fact that the argument was related to emotional and psychological impact of acts that were entirely established by the evidence, rather than an effect for which no evidence had been offered.

Defendant also offers an argument that the cumulative effect of the prosecutorial misconduct was greater than the sum of its parts, but because no meaningful misconduct took place, this argument must be rejected. Therefore, defendant's motion for a new trial cannot succeed on these grounds.

b. *Cross-Examination of Virgil Napier*

During trial, the Court limited defense counsel's questioning into what punishment co-defendant Virgil Napier might receive and what efforts the government might make to reduce Napier's sentence if he testified against defendant. Specifically, the Court prohibited defense counsel from introducing the phrase "mandatory minimum" during the

11

questioning. (Dkt. 263 at 85.) Defendant now contends that this violated his Confrontation Clause rights, because he should have been able to ask more specific questions about the potential for a sentence reduction. (Dkt. 244 at 12.)

Defense counsel *was* permitted to question Napier about his motivation to testify (Dkt. 263, 82–83 (the Court affirming, during sidebar: "You absolutely have the right to find out whether he's motivated to lie. And so in doing that, you can ask him whether he expects to get the Government to recommend a lower sentence."). Defense counsel pursued that line of questioning. (*See, e.g.*, Dkt. 263 at 86 (defense counsel questioning Napier regarding whether "the sentence that [Napier] may receive can be impacted by the Government's decision to do certain things if you testify or not?").) Because defendant's counsel questioned Napier extensively on the possibility that he might receive a benefit from the government in exchange for his testimony, the jury was "in possession of sufficient information to make a 'discriminating appraisal'" of Napier's "motives and bias." *United States v. Kone*, 307 F.3d 430, 436 (6th Cir. 2002) (quoting *Stevens v. Bordenkircher*, 746 F.2d 342, 347 (6th Cir. 1984)).

12

The defendant's Confrontation Clause rights were not violated, and his motion for a new trial cannot succeed on this ground.

   c. *Motion to Suppress*

Defendant argues that his motion to suppress evidence (Dkt. 119) was wrongly denied, and that the government provided evidence that contradicted the evidence that was not suppressed. Specifically, defendant argues that evidence should have been suppressed because Agent Wenning, who wrote the search warrant that led to Fuller's arrest, had limited personal knowledge of the investigation, and because trial evidence showed co-defendant Napier did not identify defendant by his "Yep" screen name in advance of the undercover operation. (Dkt. 244 at 12–13.)

The first challenge is without merit because an agent is permitted to rely on the investigations of other officers in drafting a search warrant and establishing probable cause. *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996). The second challenge is without merit because although Napier stated that he did not mention the "Yep" username during the first FBI interview on November 16, 2015, (Dkt. 263 at 93), he did mention it during the second meeting with Agent

13

Christensen on November 20, 2015, which was in advance of the undercover operation in December 2015. (*Id*. at 115.) The Court did not err in denying defendant's motion to dismiss. Defendant's motion for a new trial cannot succeed on this ground.

> *d. Co-defendant John L. Garrison's Computer and File Naming Conventions*

Defendant's final ground for a new trial is that the admission of testimony and evidence regarding filenames on co-defendant John L. Garrison's computer constituted improperly admitted hearsay evidence. (Dkt. 244 at 15.) Defendant asserts the government was able to demonstrate a "key thrust" of their theory of the case based on the fact that file names found on co-defendant Garrison's computer contained the name "Yep" (defendant's username). (*Id*.)

Defendant misrepresents the evidence that was introduced at trial. The government introduced testimony – without objection – regarding the naming convention on co-defendant Garrison's computer. Agent Christiansen, testifying as an expert forensic analyst, confirmed that when Garrison was recording live activity, he used a naming convention that documented the username of the individual being videotaped, the name of the chat room in which the video was recorded,

14

and a sequential numeral. (Dkt. 261 at 79.) Similarly, when Garrison was capturing previously recorded videos that were re-broadcast within a private chat room, he used a naming convention that documented the name of the private chat room, the username of the individual who was broadcasting the video, and a sequential numeral. (Dkt. 262 at 43.)

The evidence regarding co-defendant Garrison's naming convention was first introduced in the middle of extended testimony by the analyst as he described a process of systematically matching different videos found on the computers and external hard drives of different co-defendants. He used this matching process in order to prove that the defendants had each created independent recordings of the same minor victim performing the same sexual activity at the same time. (*See, e.g.,* Dkt. 261 at 119 (confirming that an exhibit shown to the jury "showed the three clips together to show it's the same activity by the same girl on the same evening").) The content of the videos – not their file names – is what connected the activities of the co-defendants. (*See, e.g.*, Dkt. 262 at 30 (analyst confirming that he knows videos were all from the same date and approximately the same time because he "watched them all and they matched").)

In later testimony describing the "looping" process (where a defendant would broadcast images and pre-recorded videos of young men or boys engaging in sexual activity to the female victims in order to encourage them to engage in sexual activity themselves), the analyst confirmed that he had found several videos on Garrison's devices that contained "Yep" in the file name. As was the case with the matching videos of the minor victims, the analyst did not rely solely on the file name to confirm the coordination between the defendants. Instead, the government introduced evidence to demonstrate that the same images and pre-recorded videos were found on defendant's own devices. (*See, e.g.,* Dkt. 262 at 49–50.)

It is arguable whether or not the naming convention could reasonably be considered hearsay, as it is unclear from the record whether Garrison used a software program to automatically generate file names. However, even if Garrison personally named all of his video files, information gleaned from the file names was not necessary to link the "looping" images and videos that were found on both Garrison's and defendant's machines. Defendant's motion for a new trial cannot succeed on this ground.

## IV. Conclusion

Even if defendant is correct on any one of his arguments for a new trial, and the undersigned does not believe that he is, the evidence against the defendant was so voluminous and so powerful that the interests of justice do not require a new trial. Indeed, it would be a miscarriage of justice to grant this motion. Therefore, for the reasons set forth above, defendant's motion for a new trial (Dkt. 244) is DENIED.

IT IS SO ORDERED.

Dated: October 11, 2017           s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                                               United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 11, 2017.

                                               s/Shawna Burns
                                               SHAWNA BURNS
                                               Case Manager